IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMMUNITY DEVELOPMENT, INC., THE ORCHARDS AT WILDEWOOD LIMITED PARTNERSHIP, WALNUT CREEK CDI LIMITED PARTNERSHIP, AND CHANDLER PLACE LIMITED PARTNERSHIP,<br><br>Plaintiffs,<br><br>vs.<br><br>SARPY COUNTY NEBRASKA, SARPY COUNTY BOARD OF EQUALIZATION, DAN PITTMAN, Sarpy County Assessor; NANCY J. SALMON, Chairperson of the Nebraska Tax and Equalization and Review Commission; ROBERT W. HOTZ, Vice Chairperson of the Nebraska Tax Equalization and Review Commission; STEVEN A. KEETLE, AND Commissioner of the Nebraska Tax Equalization and Review Commission; and NEBRASKA TAX EQUALIZATION AND REVIEW COMMISSION,<br><br>Defendants. | **8:16CV135**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the court on Plaintiffs' motion to remand. (Filing No. 6). For the reasons set forth below, the motion should be granted.

BACKGROUND

Plaintiffs Orchard at Wildewood Limited Partnership ("the Orchards") and Walnut Creek CDI Limited Partnership ("Walnut Creek") own property in Sarpy County, Nebraska. Those properties are improved with rent-restricted housing that receives low-income housing tax credits ("LIHTC"). Pursuant to federal law, these tax credits can be used to offset federal income tax liability for investors in low income, multifamily rental housing. The developers can sell the credits to investors to help provide the capital for constructing the housing projects. Both the Orchards' property and Walnut Creek's property are subject to land use

restriction agreements ("LURA"). Under these agreements, rents are restricted and tenants must meet federal income qualification standards and be over 55 years of age. Thus, the projects are designed to benefit low income seniors.

As property owners, Plaintiffs are required to pay county assessed real estate taxes on their respective properties. Plaintiffs allege the real estate taxes for LIHTC properties in Sarpy County have increased each year since 2009 and "newer LIHTC properties observed a considerable increase in real estate taxes in 2012 and 2013." Filing No. 1-1, ¶17 at CM/ECF p. 43. Real estate taxes are based on the assessed value of the property in question. For LIHTC properties, using the "income capitalization approach is the most accurate in determining the assessed value" of LIHTC properties. Filing No. 1-1, ¶19 at CM/ECF p. 43. "Assessed value under this methodology should be determined by taking a property's actual Net Operating Income ("NOI") and dividing this number by a determined capitalization rate." Id.

Plaintiffs' complaint alleges Defendants have "artificially inflated" Plaintiffs' NOI and have been "increasingly excessive, artificial, arbitrary, capricious, and unreasonable in determining an appropriate capitalization rate for LIHTC properties." Filing No. 1-1, ¶21 at CM/ECF p. 44. As a result, Plaintiffs contend they have been saddled with "an artificially inflated property tax burden," (id., ¶20 at CM/ECF p. 44), resulting in "an objectionable inequitable treatment of affordable housing in Sarpy County as compared to market rate properties, which are not rent-restricted." Id., ¶23 at CM/ECF p. 44.

Plaintiffs claim Sarpy County's tax valuation and taxing practices cause not only monetary losses, not also "disparately harm African-Americans and Hispanics by perpetuating racial segregation in the overwhelmingly white Sarpy County." Filing No. 1-1, ¶40 at CM/ECF p. 47. Plaintiffs allege "[a] disproportionate number of African American and Hispanic residents rely on affordable housing because their income is disproportionately less than Whites." Id., ¶37 at CM/ECF p. 47. Plaintiffs argue Defendants' taxing policies

violate the Federal Fair Housing Act ("FHA") and the Nebraska Fair Housing Act because Sarpy County's tax policies discourage LIHTC housing development in Sarpy County as compared to neighboring areas (such as Douglas County and Omaha) where the real estate taxes are considerably less for comparable properties. Plaintiffs similarly claim Defendants' taxing policies and practices adversely affect disabled individuals.

Defendants removed this action to federal court, arguing Plaintiffs' claims allege FHA violations and therefore the court has federal question jurisdiction. Plaintiffs now move to remand the case to the District Court of Sarpy County, arguing the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, divests this court of subject matter jurisdiction over Plaintiffs' claims.

ANALYSIS

Under the TIA, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C § 1341. Hibbs v. Winn, 542 U.S. 88 (2004) provides guidance on when the TIA prevents a federal court from adjudicating a case involving state tax issues. In Hibbs, Arizona taxpayers filed an action in federal court to challenge the constitutionality of an Arizona statute permitting tax credits for contributions supporting parochial schools. The defendants moved to dismiss the action under the TIA, arguing the TIA prohibited the federal court from hearing the action. The Ninth Circuit disagreed and reversed the lower court's ruling dismissing the action. The Supreme Court upheld the Ninth Circuit's ruling. Id. at 111-12. The Court reasoned that the petitioners in Hibbs were not seeking relief that would have "operated to reduce the flow of state tax." Id. at 106. The Court specifically distinguished Hibbs from cases that fell squarely within the TIA's reach – cases in which a favorable outcome for the plaintiff would lead to restrictions on the state's ability to assess or collect taxes. Id.

The Supreme Court has consistently applied the TIA to cases where a taxpayer alleged a state tax law, policy, or procedure violated the constitution or other federal law. See National Private Truck Council, Inc. v. Oklahoma Tax Com'n, 515 U.S. 582, 591 (1995); Rosewell v. LaSalle Nat. Bank, 450 U.S. 503 (1981); Real Estate Assn., Inc. v. McNary, 454 U.S. 100, 105-06 (1981). Lower courts have held likewise. See U.S. v County of Nassau, 79 F. Supp. 2d 190 (E.D.N.Y. 2000); Grace v. Hynes, case no. 95c4640, 1996 WL 495561 (N.D. Ill., Aug. 28 1996) (finding the TIA prevented the federal court from hearing a challenge to property tax assessment based on alleged violations of the FHA). In short, federal courts are jurisdictionally barred from hearing actions where a plaintiff's success would ultimately reduce a state's tax revenue or impede its ability to collect or assess taxes.

In this case, Plaintiffs are seeking the return of previously paid taxes in the form of a prayer for damages and for an injunction against Defendants from employing their allegedly discriminatory tax practices which lead to "inflated" property valuations and higher property taxes. If Plaintiffs are successful, Sarpy County's tax revenues will decrease with respect the properties in question and presumably other LIHTC properties. As such, this case falls squarely within the auspices of the TIA. See, e.g., Levy v. Pappas, 510 F.3d 755, 762 (7th Cir. 2007)(abrogated on other grounds by Levin v. Commerce Energy, Inc., 560 U.S. 413 (2010) (finding the TIA barred the plaintiff's section 1983 action based on equal protection and due process arguments because the suit "went to the heart of the county's ability to control its tax revenue.")).

Defendants argue, in part, the TIA is inapplicable because the Plaintiffs do not have a "plain, speedy and efficient remedy" as required by the TIA. The "plain, speedy and efficient remedy" requirement is to be construed narrowly. See California v. Grace Brethren Church, 457 U.S. 393, 413 (1982).

A state-court remedy is "plain, speedy and efficient" only if it provides the taxpayer with a full hearing and judicial determination at which he or she may raise any and all constitutional objections to the tax, Grace Brethren, 457 U.S.

4

at 411, 102 S.Ct. at 2509 (quoting Rosewell, 450 U.S. at 514, 101 S.Ct. at 1229), subject to eventual review by the Supreme Court, see Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). The adequacy of the state remedy is measured according to procedural rather than substantive criteria. Rosewell, 450 U.S. at 512, 101 S.Ct. at 1228. As long as the taxpayer's federal rights receive full consideration, the remedy is adequate. See id. at 514–15, 101 S.Ct. at 1229–30 (rejecting taxpayer's argument that state's failure to pay interest to successful litigant in tax refund suit made remedy inadequate, because the availability of interest related to the substance of the remedy).

Burris v. City of Little Rock, 941 F.2d 717, 720 (8th Cir. 1991).

Taken on its face, Plaintiffs' complaint alleges violations of the Fair Housing Act. The FHA specifically provides for an efficient remedy in the state court system. See 42 U.S.C. § 3613(a)(1)(A). In other words, a state court is an appropriate forum for addressing alleged violations of the FHA. See, e.g., City of Kansas City, Mo. V. Yarco Co., Inc., 625 F.3d 1038, 1041 (8th Cir 2010)(remanding a case containing an FHA claim to state court and acknowledging the state court may have to rule on federal questions). The case should be remanded for this reason alone. Grace, 1996 WL 495561 at *1.

However, Defendants argue that "the only possible way to interpret Plaintiffs' complaint as a tax complaint is to read it as an equalization argument" and presumably not as a claim under the FHA. Filing No. 8 at CM/ECF p. 3. Defendants further assert, "there is no remedy available to Plaintiffs in State court for this type of complaint." Id. But such a reading of the TIA is too narrow: Plaintiffs' complaint clearly implicates both the FHA and the flow of tax revenues. Even if Plaintiffs' complaint could be interpreted solely as an equalization claim, Nebraska statutes provide a system for challenging county property tax

assessments.[1]  Plaintiffs therefore have an avenue in state court for claiming the method for valuing their respective properties is unfair, arbitrary, or as applied, violates federal law.[2]

For the foregoing reasons, this court lacks jurisdiction to adjudicate this dispute.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to remand filed by the plaintiffs (Filing No. 6) be granted in its entirety and the case be remanded to the District Court of Sarpy County, Nebraska.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 26th day of May, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

[1] Whether, they chose to take advantage of that process is not relevant.  See McDonald v. Nevada, case no. 2:14cv00545, 2014 WL 5364133, n. 1 (D. Nev., October 20, 2014).

[2] Defendants rely heavily on the case of Louisville and N.R. Co. v. Public Service Commission of Tennessee, 493 F.Supp. 162 (M.D. Tenn. 1978) to argue they have no state law remedy.  In Louisville, the federal court determined it had jurisdiction over the taxpayer's equalization claim notwithstanding the TIA.  However, Louisville was based on Tennessee law, and Tennessee courts did not provide a remedy to a taxpayer bringing an equalization claim.  Louisville, 493 F.Supp. at 170.  No such bar exists in Nebraska and a taxpayer may have its real property valuation and/or tax assessment lowered through the state court judicial process.  See Chief Industries, Inc. v. Hamilton County Bd. of Equalization, 422 N.W.2d 324, 228 Neb. 275 (1988); Zabawa v. Douglas County Board of Equalization, 757 N.W.2d 522, 17 Neb.App. 221 (2008).  Thus, Defendants reliance on Louisville is misplaced.